Scileppi, J.
The defendants, Boone and Brandon, appeal from judgments of the Appellate Division, First Department, which affirmed judgments of the Supreme Court, New York County, convicting each of the defendants of murder in the first degree and sentencing them to life imprisonment.
The defendants were found guilty of murdering Thomas Brooks whose bound and gagged body was discovered in his apartment by his son Daniel on February 20, 1965. According to medical testimony, Mr. Brooks had died two days earlier; death was caused by fractures of the mandible (jaw bone), hyoid bone (a bone in the vicinity of the larynx) and asphyxiation by smothering from a gag in the mouth.
The deceased was last seen alive in his apartment on the afternoon of the murder, February 18, 1965, by an exterminator who testified that he saw him first about 1:30 p.m. and again about 20 minutes later.
A portable television set which was taken from the apartment was pawned on February 18,1965 by Louis Cook. Cook, who led the police to both Boone and Brandon, testified that Boone and a girl named Adele approached him on a street corner and asked him to pawn a television set. For a small profit, he agreed to pawn the set and picked it up in a vestibule around the corner. Brandon was in the hallway when he picked up the set. Cook further testified that later in the day, after he had pawned the set, Boone admitted that he and Brandon had stolen it. Several days later, after an argument, Cook gave the pawn ticket to Boone.
Adele McClinton testified that on February 18, 1965, while seated in the Rock Tavern waiting for Louis Cook to purchase narcotics for her, she saw two men alighting from a cab, one of them Brandon, carrying a television set. They entered the tavern and Boone approached her and asked if she would pawn the television set for them offering her $10 to do so. Since she *480 did not have proper identification, she suggested that perhaps her friend Louis Cook could help. She further testified that after Cook pawned the set she overheard Cook and Boone arguing about money and eventually she saw Boone hand Cook a sum of money.
Ernest Clark, another prosecution witness, testified that he was familiar with Boone from having seen him around the neighborhood. On February 23, 1965 Boone approached Clark and asked him if he was interested in purchasing a pawn ticket or television set. After visiting the pawn shop and inspecting the set, Clark bought the ticket and had the pawnbroker transfer the set to his name. The day after he redeemed the set, Clark was visited by the police, who instructed him to bring the set to the precinct.
In addition to the foregoing evidence, the People introduced a formal confession made by Brandon. This confession, which was technically inadmissible against and highly prejudicial to Boone (see People v. Adams, 21 N Y 2d 397) asserted, inter alia, that Boone struck Brooks, that Boone went to pawn the television set and later also pawned a suit stolen from Brooks’ apartment, and that Brandon and Boone used the pawn money to buy heroin.
Since each defendant raises different arguments on this appeal, we treat with their cases separately.

With Respect to Brandon

On May 20, 1966 a pretrial hearing as to the voluntariness of Brandon’s alleged statements was commenced. On June 1,1966 the hearing concluded with a finding that the statements were voluntarily given. Not until June 22, 1966, however, was any evidence received on the trial concerning the statements and not until June 23,1966 were the statements offered in evidence.
Brandon contends that, although his trial commenced before the decision in Miranda v. Arizona (384 U. S. 436), his statements should have been ruled inadmissible since he was not given the four-fold “ Miranda ” warning at the time he was interrogated. We cannot agree with this conclusion.
In Johnson v. New Jersey (384 U. S. 719) decided on June 20, 1966, three days before the statements in this case were admitted in evidence, the Supreme Court held “that Escobedo and *481 Miranda should apply only to cases commenced after those decisions were announced” (Johnson v. New Jersey, supra, p. 733). And in People v. McQueen (18 N Y 2d 337) this court refused to apply a greater measure of retroactivity to Miranda than had been applied by the Supreme Court in Johnson, although Johnson made it clear that State courts were free to do so.
Brandon, however, attempts to distinguish Johnson and McQueen from the instant case by pointing out that in those cases the defendants’ trials had been completed prior to the Miranda decision and the defendants were either in the process of direct appeal or had gained access to the appellate court by means of a postconviction remedy. He contends that in this case the trial was still in progress at the time Miranda was handed down and, since Miranda was then the law of the land, it was error to receive his statement in evidence. We do not find this distinction to be vital, for it is also true that at the time the confessions were introduced Johnson v. New Jersey (supra) was the law of the land. As noted earlier, the Supreme Court made it quite clear that Miranda should not be applied where the trial had commenced before June 13, 1966 (Johnson v. New Jersey, supra, pp. 732-734). Moreover, in People v. McQueen (supra) this court squarely held the constitutional mandates of Miranda would apply only to defendants whose trial commenced on or after June 13, 1966. Brandon has presented no argument which compels us to deviate from this holding.
Nor is it unreasonable to deprive Brandon of the benefits of Miranda. Brandon insists, not without justification, that his trial should have been governed by contemporaneous evidentiary rules and constitutional standards. This, however, is precisely what happened for, at the time the jury was first apprised of the confession, that is, during the prosecutor’s opening address, the law in this jurisdiction was clear that there was no exclusion because of a failure on the part of the arresting authorities spontaneously to advise a defendant of his constitutional rights (see, e.g., People v. Gunner, 15 N Y 2d 226 [1965]). Moreover, the assistant district attorney in charge of the prosecution was obliged by statute to open to the jury (Code Crim. Pro., § 388), which opening must, of course, fairly outline the principal facets of the People’s case (see People v. *482 Levine, 297 N. Y. 144 [1948]). The contents of Brandon’s confession could not very well have been omitted from this synopsis, nor at the time was there any need to do so, for it is clear that the prosecutor relied in good faith upon existing law under which the procedures followed were entirely proper. It is true that subsequently, during the course of the trial, the law as to the admissibility of confessions was substantially altered by the Miranda decision. This change, however, came too late in the sequence of events to be of benefit to appellant, for the jury already knew (properly under existing law) that Brandon had confessed to Brooks’ murder.
Considerations such as .these must have influenced the Supreme Court in its decision to limit Miranda to trials commenced after the date of its publication, for surely the court was aware that there were trials then in progress in which confessions, invalid by Miranda criteria, had already been disclosed or introduced into evidence. In order, then, not to disrupt current trials in which such evidence had been properly previously offered, the court held in Johnson that the rule of Miranda would operate only for trials begun after the date Miranda was published. Had the court intended otherwise, it could have said that Miranda would apply to trials commencing after June 13, 1966 as well as to trials already in progress on that date.
Essentially, then, it is appellant’s misfortune that he was brought to trial before June 13; since he received a fair trial by then-existing standards, however, he had no cause to complain —■ at least no more cause than anyone else tried before that date.
Brandon further argues that he was denied due process of law and equal protection of the law in that “ upon the same set of facts a confession would be ruled inadmissible in a case on trial which trial commenced after June 13, 1966 while in [Brandon’s] case because of the fact that his trial commenced prior to June 13, 1966 a different ruling on admissibility applied.” Suffice it to say, first, that this argument was thoroughly considered in the several opinions contained in the McQueen case, and second, in announcing the June 13, 1966 cut-off date in Johnson v. New Jersey, the Supreme Court observed “ that there are no jurisprudential or constitutional obstacles to the rule we are adopting here ” (Johnson v. New Jersey, supra, p. 733; emphasis added).
*483 Prior to trial Brandon moved to suppress the use of his confession on the ground that it was extracted by virtue of fear and duress. After a hearing, held in accordance with our decision in People v. Huntley (15 N Y 2d 72), the Trial Judge found that the People had proved beyond a reasonable doubt that the confession was made voluntarily. Brandon contends that this was error. Upon perusing the record, we cannot agree. Brandon testified, in substance, that he was taken into custody at about 10:00 p.m. on the night of February 26, 1965 and was not advised of his right to an attorney or to remain silent; that he was assaulted and threatened by the police; that he was confronted by the witness Louis Cook who shocked him by stating that the investigation concerned a murder; and that he confessed only after the police falsely told him that codefendant Boone had confessed and stated that Brandon was the killer. Contrary to Brandon’s testimony, the People’s evidence disclosed that at no time was Brandon threatened or assaulted. Hector Barisone, M.D., a medical officer assigned to the City Prison by the Department of Correction, stated that he examined Brandon on February 28, 1965 and found no marks on his body, no evidence of trauma. Brandon was not continuously questioned nor was he denied food. The People do admit, however, that Brandon was falsely told that Boone had confessed and had accused Brandon of being the killer. But, deception alone, in the absence of any threat or promise of immunity, is not enough to render a confession involuntary (People v. McQueen, 18 N Y 2d 337, supra; see, also, People v. Everett, 10 N Y 2d 500).
Although we treat with the background of the defendant; the time, place and length of interrogation; delay in arraignment; the presence or absence of a request for or a warning of the defendant’s right to counsel; ignorance of the right to remain silent and complaints of brutality, among the relevant factors to be considered on the question of voluntariness, we have held in People v. Leonti (18 N Y 2d 384) that the determination of the “ ultimate issue ” is for the trier of the fact and our review is restricted to the question of the sufficiency of the evidence. From the evidence in the record conflicting inferences might be drawn, but the choice of inferences was for the Trial Judge. Since we find that that choice is amply supported by sufficient *484 evidence, we cannot hold that Brandon’s confession was involuntary.
Having considered Brandon’s other points, we find them to be without merit.
Accordingly, we hold that in Brandon’s case the judgment appealed from should be affirmed.

With Respect To Boone

Boone’s conviction must be reversed and a new trial ordered. As noted earlier, at the trial, Brandon’s confession which was highly prejudicial to and technically inadmissible against Boone was admitted into evidence, with cautionary instructions that the jury was to consider the confession against Brandon only. This procedure was apparently followed because the Trial Judge had already denied two motions made by Boone for a. severance, and it is clear from a reading of the confession that effective redaction would have been impossible (see People v. Burrelle, 21 N Y 2d 265). At the sentencing, Boone, speaking pro se, asked the court to set aside the verdict ‘1 on the ground that I did not have the right to cross-examine my accuser ” inasmuch as his codefendant had not assumed the witness stand. The court denied the motion.
It is now clear that the motion should have been granted. On May 20, 1967 in Bruton v. United States (391 U. S. 123) the Supreme Court overruled Delli Paoli v. United States (352 U. S. 232) “ because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner’s guilt, admission of [the codefendant’s] confession in this joint trial violated petitioner’s right of cross-examination secured by the Confrontation Clause of the Sixth Amendment ” (Bruton v. United States, supra, p. 126).
While the retroactive application of Bruton was an open question at the time the instant case was first presented to this court, .the Supreme Court has since resolved any doubt that may have existed. In Roberts v. Russell (392 U. S. 293), the court held that Bruton is to be applied retroactively. That this holding is binding on the States is clear, for the court said (supra, p. 294): “ Although Bruton involved a federal proseen *485 tion and this is a State prosecution, the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is made applicable to the States by the Fourteenth Amendment. Pointer v. Texas, 380 U. S. 400; Douglas v. Alabama, 380 U. S. 415."
It is suggested by the dissenting Judges that notwithstanding Bruton a reversal here is unwarranted because Boone not only failed to object to the introduction of Brandon’s confession but in fact requested and received cautionary instructions from the Trial Judge that the jury was not to consider Brandon’s confession in determining the guilt or innocence of Boone. We reject this view. Boone’s motion for a severance saved the question for review under our holding in People v. La Belle (18 N Y 2d 405). And even absent the Bruton case, a reversal would be indicated here because, although the other evidence against Boone is legally sufficient, it presented a close question for the jury, and it cannot be said with any degree of certainty that the jury would have convicted Boone without Brandon’s confession. Under these circumstances, the holding of People v. Fisher (249 N. Y. 419, 427-428) is controlling: “In a case where, without the existence of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, our review of the judgment would compel us to conclude that an abuse of discretion had been committed. One who makes no confession must be found guilty, if at all, only on proof independent of a confession by a codefendant ” (see, also, United States ex rel. Hill v. Deegan, 268 F. Supp. 580, 595 [S. D. N. Y., 1967].)
Although Bruton condemns the practice of admitting into evidence, with cautionary instructions, at a joint trial, the confession of one codefendant which implicates another codefendant, this does not mean that in all cases there must be a separate trial or a joint trial without the confession. Bruton was concerned with a particular practice which the court found pernicious because it infringed on the nonconfessor’s right of confrontation. But as the court noted, the prosecution need not be denied the use of the confession, in a joint trial, to prove the confessor’s guilt, if a viable alternative to the “ cautionary instruction ’ ’ procedure exists, which does not infringe on the *486 right of confrontation (Bruton v. United States, supra, pp. 133-134).
It would thus seem that, where the confession can be effectively redacted without prejudice to declarant or nondeclarant, the confession may be used at a joint trial. Of course, the burden of effectively redacting is one which rests heavily upon the prosecution. And while redaction is a crutch which should not be relied on too strongly, we are of the opinion that it is a practice which, for the time being, can, consonant with the confrontation clause of the Constitution, be utilized in a proper case.
Accordingly, with respect to defendant Brandon, the judgment appealed from should be affirmed, and with respect to defendant Boone, the judgment appealed from should be reversed and a new trial ordered.