UNITED STATES of America ex rel. John BRANDON, Petitioner,

v.

Hon. J. E. LaVALLEE, Superintendent, Clinton Correctional Facility, Dannemora, New York, Respondent.

No. 72 Civ. 2591.

United States District Court, S. D. New York.

April 16, 1974.

John Brandon, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y. by Iris A. Steel, Asst. Atty. Gen., for respondent.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a petition for a writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254. There is no doubt that petitioner has exhausted his state remedies; all of his arguments on this petition having been raised either directly or indirectly in prior state court proceedings. See, e. g., People v. Brandon, 29 A.D.2d 631, 285 N.Y.S.2d 272 (1st Dept. 1967); aff'd, People v. Boone, 22 N.Y.2d 476, 293 N.Y.S.2d 287, 239 N.E.2d 885 (1968); People ex rel. Brandon v. Deegan, 35 A.D.2d 781, 316 N.Y.S.2d 203 (2d Dept. 1970); People v. Brandon, 34 A.D.2d 896, 311 N.Y.S.2d 808 (1st Dept. 1970); People v. Brandon, 38 A.D.2d 893, 328 N.Y.S.2d 1014 (1st Dept. 1972).

The petitioner stands convicted of the murder (in the first degree) of one Thomas Brooks, which occurred during the course of a robbery on February 18, 1965. At the trial the People showed that the petitioner and one Brunno Boone robbed the victim Brooks of a suit and a television set. Shortly after the robbery and murder the petitioner and Boone were seen in possession of the stolen television set which Boone arranged to have pawned for a paltry few dollars.

Shortly thereafter, Brandon was apprehended and eventually confessed, implicating Boone as the person who actually choked and beat the victim to death. Boone was arrested and made no admissions. At trial the evidence, other than the petitioner's confession, was circumstantial and somewhat thin. Most of the other evidence bore on recent possession of the fruits of the crime (the television set) and did not bear directly on the felony murder.

In the instant petition, Brandon again attacks the voluntary nature of his confession; he asserts that he was convicted on insufficient evidence; and he claims that he was deprived of his right to counsel on appeal since assigned counsel made improper arguments with regard to the voluntariness of his confession.

At the so-called "Huntley hearing" prior to trial (cf. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) and at his trial the petitioner maintained that his confession was coerced by beatings he had received from the detectives who had questioned him. He claimed that he did not complain to the Assistant District Attorney about his treatment since he was intimidated by the detectives. The petitioner, however, did complain to the Court on his arraignment and the Judge commented that petitioner had only a "pimple mark" but ordered that he be examined by a doctor. The examining doctor was unable to find any evidence of trauma.

The trial court and the jury thus apparently believed the People's version of the events leading up to the confession. That evidence showed that the petitioner was arrested at about 10:00 p. m. on the night of February 26, 1965, after having been identified as the person in possession of the television set stolen from Brooks' apartment. The arresting officers brought the petitioner to the 24th Precinct and telephoned the detectives handling the murder investigation. Detective Cotter arrived at the Station House at about 12:30 or 1:00 a. m. and telephoned Detective Cavorley of the Homicide Squad, who arrived at about 3:00 a. m. The two detectives confronted the petitioner with the person who had pawned the television set and also with a picture of his co-defendant Boone. They told Brandon falsely that Boone had confessed and had stated that Brandon actually committed the murder. As a result, at about 5:00 a. m. the petitioner made a full confession.

Both detectives denied any mistreatment of the petitioner although there is some evidence that one of them may have raised his voice in questioning Brandon. Apparently the petitioner had a sandwich and some coffee during this period. After he had confessed, Brandon slept in a detaining cell until about 8:30 a. m., when an Assistant District Attorney arrived to take his confession in question and answer form with a stenographer recording it.

It is undisputed that the petitioner was not given the so-called "Miranda" warnings concerning his right to counsel either before his confession to the detectives or to the Assistant District Attorney. It is also clear that the defendant did not request counsel before these confessions nor did any attorney attempt in any way to represent him.

The petitioner's trial started on June 2, 1966, prior to the decision of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), handed down on June 13, 1966. The petitioner's confession was introduced at his trial on June 23, 1966, some 10 days after the *Miranda* decision.

The petitioner maintains that his confession should have been excluded from his trial as a matter of law under Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and that it was not voluntary.

In the *Escobedo* case, the conviction was struck down because it was based on a confession obtained by state officials in the absence of counsel for the defendant although the defendant had requested the services of a lawyer prior to making the confession. That case is totally inapposite, for here the petitioner neither asked for an attorney nor was any attorney attempting to represent him. It is true that ever since the *Miranda* decision, the authorities are required to advise a putative defendant of his right to counsel, but that requirement does not apply to cases where the trial commenced prior to June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ Nor can I say as a matter of fact that Brandon's confession was involuntary. His story was incredible and totally unsupported by any evidence, whereas a reading of the record convinces me that the confession was voluntary. The fact that the detectives lied to the petitioner to elicit the confession does not render it involuntary as a matter of law. United States ex rel. Caminito v. Murphy, 222 F.2d 698, 700–701 (2d Cir. 1955). Nor does the absence of warnings (for pre-*Miranda* confessions) render the confession involuntary as a matter of law. United States ex rel. Liss v. Mancusi, 427 F.2d 225 (2d Cir. 1970).

The petitioner's claim that there was insufficient evidence to support his conviction is premised on the argument that his confession should have been excluded at his trial. This claim must fall as I have already ruled that the confession was properly admitted and the confession constitutes a prima facie case against the petitioner.

■ It is necessary ultimately to consider the petitioner's claim that he was deprived of his right to counsel on the appeal from his conviction. The test for incompetency of counsel has been stated by the Court of Appeals for this Circuit to require that counsel be so inadequate as to "shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States v. Wright, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

Petitioner claims that his assigned appellate counsel was incompetent since he argued that Miranda v. Arizona, *supra*, controlled the admissibility of the petitioner's confession. This argument was adopted by two judges of the New York State Court of Appeals and by Mr. Justice Douglas of the United States Supreme Court in petitioner's appeal. In the face of this, to claim that counsel's argument was incompetent is frivolous.

The petition is denied.

So ordered.