OPINION OF THE COURT
Gabrielli, J.
Defendants Smalls and McGee appeal from separate orders of the Appellate Division, affirming their convictions, after a joint trial, of murder in the second degree (Penal Law, § 125.25, subd 3). We conclude that the conviction of defendant Smalls must be reversed, as error was committed as to him both in the admission of the codefendant McGee’s confession on this joint trial and in charging the jury regarding the presumption of intent. While this error in the charge was also committed as against defendant McGee, we hold that under the circumstances of this case, the error was harmless. As we find defendant McGee’s other contentions to be without merit, his conviction should be affirmed.
I
The two defendants were indicted on January 28, 1977, for the crimes of murder in the second degree and attempted robbery in the first degree. Mary Jenkins, who testified at the trial on behalf of the prosecution, was likewise indicted, but pleaded guilty to the attempted robbery charge in satisfaction of the indictment. The indictments arose from an incident occurring on December 7, 1976, during which Mary Jenkins, Phillip Green, defendant Anthony McGee and defendant Leonard Smalls allegedly attempted a robbery of the apartment of Pedro Pratt. During the course of the attempted robbery, Pratt was shot, receiving head wounds from which he died a few days later.
*412 Three weeks after this incident, McGee was taken into custody. After being read his Miranda rights, McGee made a statement to a detective, which was reduced to writing and signed by McGee. McGee later made substantially the same statement to an Assistant District Attorney, which was stenographically recorded. The essence of these statements is that McGee had agreed with Green on a plan to make money. On their way to Jenkins’ house they met a “guy” named “Lenny” (in the handwritten statement, this “guy” was referred to as someone whose name began with an “L”), and told him what they planned to do. The planning of the robbery took place between Jenkins, Green and McGee, although “Lenny” was present for part of the discussion. McGee indicated that after the three men forced their way into Pratt’s apartment, McGee pointed'his gun at Pratt, and although he never intended to harm anyone, Pratt lunged at McGee, hitting the arm holding the pistol. The pistol had a “hair trigger” and went off; Pratt fell to the floor. McGee left immediately and went home where he stayed all night. “Lenny” also left immediately after the shooting.
About two weeks later, Smalls was also apprehended. Having been read his Miranda rights, Smalls made a statement (which he eventually refused to sign), in which he discussed his involvement in the events leading up to the robbery and shooting of Pratt. Smalls made another oral statement to the Assistant District Attorney, which was ultimately suppressed. In his first oral statement, Smalls indicated that he was with McGee and Green on the night of the crimes and went with them to the Jenkins apartment. At one point, he asked Green “what was happening”, to which Green responded that they were “going to do it now”. The essence of Smalls’ statement is that he was present during the planning and execution of the robbery, and was present during the shooting, but nowhere does he indicate that he was aware of what was taking place or that he intended to take part in the robbery. Indeed, while his statement corroborates many of the details of the events leading to the robbery and shooting, it does not speak directly to the criminal aspects of the *413 robbery, nor did Smalls in any way indicate that he actively or knowingly participated in any of these events.
Smalls’ pretrial motion to sever his trial from that of McGee’s was denied. Both defendants moved to suppress their pretrial statements. Smalls’ motion to suppress was granted to the extent of suppressing his second oral statement because the Assistant District Attorney had not given him a new set of Miranda warnings before questioning him. McGee’s motion to suppress his statements was denied.
Smalls then renewed his motion to sever his trial, on the ground that the introduction of McGee’s pretrial statements would prejudice Smalls, since Smalls was implicated in those statements as a participant in the robbery, while Smalls’ pretrial statement merely placed him -at the scene and did not implicate him directly. The motion was denied, the court noting that the portions of McGee’s statements implicating Smalls might be redacted to eliminate such references. Smalls’ counsel and the prosecutor did agree as to which portions of McGee’s statements should be redacted (which were subsequently ordered redacted by the court), although Smalls’ counsel continued to object to the entire procedure. Despite this attempt at redaction, references to Smalls’ guilty knowledge of the robbery were not entirely eliminated.
The evidence at trial, in addition to the statements of the two defendants, consisted primarily of the testimony of Mary Jenkins, who had participated in the planning of the robbery (but, according to her, not in its execution), and two members of the Pratt family and a friend of the deceased, who were present during the course of the robbery and shooting. Jenkins’ testimony describes McGee as an active participant in the planning of the robbery; however, the only reference to Smalls’ participation is that during the planning, he sat with his head down, nodding, and his eyes closed. Smalls’ only comment during the discussion was that he “wasn’t too high to go along with it, that he wanted to go anyway”. Jenkins’ testimony indicates that she was not present during the subsequent robbery and shooting. Shortly afterward, however, McGee *414 told her that he had had to shoot Pratt. Sometime later, McGee told Jenkins that he was a “marksman” and had shot Pratt “directly between the eyes”.
Edward Tyler, a friend of the deceased, and present during the robbery, testified that three men approached him in the hallway of the apartment building, each holding a pistol. One gunman placed a pistol to Tyler’s head, while one of the others pushed open the apartment door and aimed a pistol at Pratt. Tyler was forced into the bathroom by the gunman who first approached him, and stayed there until he heard a shot from the other room. When asked if he saw the gunmen in the courtroom, Tyler responded that Smalls “looks like the man”.
Pratt’s mother, who was present during the shooting, testified that the man who was pointing a gun at Pratt shot him after demanding money. Pratt’s mother and a brother who was also present were unable to identify either of the two defendants as the gunmen. Tyler and the Pratts also testified to the completion of the robbery, indicating that the gunmen continued their efforts to obtain money after Pratt had been shot.
Neither defendant testified or presented any witnesses on his own behalf. Both defendants were convicted of felony murder. These convictions were separately affirmed by the Appellate Division. We now reverse the conviction of defendant Smalls, and affirm the conviction of defendant McGee.
II
The first issue raised on this appeal involves the propriety of admitting McGee’s confession on the joint trial of these two defendants, despite the fact that McGee never took the stand and thus did not become available for cross-examination. In Bruton v United States (391 US 123), the Supreme Court reversed the conviction of a defendant who had been implicated in the crime by the extrajudicial confession of his codefendant. This confession added substantial weight to the case against the defendant, and since the declarant never took the stand at the joint trial and thus was unavailable for cross-examination, the defendant was deprived of his right to confront the witnesses against *415 him. The Bruton rule is tempered, however, by the Supreme Court’s .recognition that where both defendants have made extrajudicial confessions that are “interlocking”, such statements may properly be admitted on the joint trial with appropriate limiting instructions (Parker v Randolph, 442 US 62). The theory behind this “exception” is that where both defendants have made voluntary statements that are substantially similar, the concern expressed in Bruton over the lack of confrontation simply does not exist to the same degree (People v Baker, 26 NY2d 169; People v McNeil, 24 NY2d 550). Whatever danger exists that the jury might use the statements improperly can be dealt with by appropriate limiting instructions.
The basis for the lower courts’ rulings in the present case admitting McGee’s statements on the joint trial was that the extrajudicial statements of Smalls and McGee were “interlocking”. We disagree and conclude that the admission of McGee’s confession on the joint trial constituted error as against Smalls. It is true that the statements corroborate each other on some of the details of the events on the-night the crimes were committed. However, they also differ in a material respect, in that McGee’s confession implicates Smalls directly as a knowing participant in the robbery, while Smalls’ statement merely places him at the scene, but never admits to any participation in, or even awareness of what was transpiring around him. The only statements made by Smalls even arguably indicating such awareness were ambiguous at best. The danger is great that the jury might have resolved these ambiguities by reference-to McGee’s statement and its indication that Smalls was informed of the details of the robbery (see People v Berzups, 49 NY2d 417; People v Safian, 46 NY2d 181, 187). Thus, the admission of McGee’s confessions, having added substantially to the case against Smalls, coupled with the unavailability of McGee for cross-examination, impermissibly deprived Smalls of his right to confront the witnesses against him (see People v Anthony, 24 NY2d 697, 704).
Moreover, we cannot accept the view that any error committed in this regard was harmless. Where an error of constitutional magnitude is involved, it can be deemed *416 harmless only when we are able to “declare a belief that it was harmless beyond a reasonable doubt” (Chapman v California, 386 US 18, 24). In the present case, we are unable to say that there was such overwhelming evidence against Smalls as to render the admission of McGee’s confession on the joint trial harmless beyond a reasonable doubt (see Harrington v California, 395 US 250). Indeed, in our view, the evidence against Smalls was far from overwhelming. While it is true that Smalls admitted to being present during the robbery and shooting, and Jenkins identified him as being present during the planning of the robbery, there is no direct evidence to indicate that Smalls actively and knowingly participated in the crimes that were taking place. Tyler’s identification of Smalls as one of the gunmen actively participating in the robbery was less than positive; the other witnesses were unable to identify Smalls. On this view of the evidence, we are unwilling to conclude that there is no reasonable possibility that the confession of McGee, directly implicating Smalls as a participant, contributed to the guilty verdict against Smalls.
We further reject the argument that, because Smalls’ attorney participated in the redaction of McGee’s confession and failed to assure that all statements implicating Smalls were eliminated, the defect, was waived. Under the circumstances of this case, where the defendant moved for a severance on the precise basis that he would be prejudiced by the admission of a codefendant’s confession, and the motion is denied because prejudice to defendant can, in the court’s view, be avoided by redaction, and counsel, though participating in the redaction process, continues to object to the entire procedure, we cannot say that the defect has been waived. We further note, in this connection, that the burden of “effectively redacting is one which rests heavily upon the prosecution” (People v Boone, 22 NY2d 476, 486).
Ill
Both Smalls and McGee contend that the trial court committed reversible error when it charged the jury that the “law says that a person is presumed to intend the natural consequences of his act”, and later, further charged *417 that “a person is presumed to intend that which he actually does”. We agree that this charge was error (Sandstrom v Montana, 442 US 510; People v Getch, 50 NY2d 456). We conclude, however, that a reversal of McGee’s conviction is not mandated, because the error was harmless beyond a reasonable doubt as to him. Inasmuch as Smalls is entitled to a new trial by reason of the Bruton error, we need not determine whether this error in the charge was harmless as to him. We assume that the error in the charge will not be repeated upon the retrial.
The question whether an error of this nature may ever be deemed harmless was expressly left open by the Supreme Court in Sandstrom v Montana (442 US 510, 525-527, supra) and by our own court in People v Getch (50 NY2d 456, 465, supra). We now hold that harmless error analysis is proper in a case in which a Sandstrom error has occurred, but where there is overwhelming evidence regarding the defendant’s intent to commit the crimes for which he was convicted (McGuinn v Crist, 657 F2d 1107, cert den 455 US ___, 102 S Ct 1614).
We note first that this case does not involve a trial in which defendant’s intent was made a vital issue to be resolved by the jury, on conflicting evidence. We have already noted that in such a case an erroneous charge on intent may not be deemed harmless (People v Getch, 50 NY2d 456, 465, supra). That being so, it remains to be determined whether the proof of McGee’s intent to commit robbery, the predicate felony underlying the charge of felony murder, was overwhelming. We conclude that it was. In addition to the direct testimony of Jenkins to the effect that McGee planned the robbery with her and Green, several of McGee’s own statements in his confession point to his unequivocal intent to perpetrate a robbery in the Pratt apartment. Given this evidence, as well as the nature of the error in the charge, we are convinced that there is no reasonable possibility that the error might have affected the jury’s determination of McGee’s guilt and that the error was therefore harmless beyond a reasonable doubt.
We have considered defendant McGee’s other contentions and find them to be without merit.
*418 Accordingly, in People v McGee, the order of the Appellate Division should be affirmed; in People v Smalls, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
In People v Smalls: Order reversed and a new trial ordered.
In People v McGee: Order affirmed.