THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE JONES, Appellant.

First Department, July 28, 1988

### APPEARANCES OF COUNSEL

*Paul Harnisch* of counsel *(Susan Corkery* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Harry R. Pollak* for appellant.

### OPINION OF THE COURT

Ross, J.

This appeal presents the issue of whether it was reversible error, in a joint trial, to admit the confessions of nontestifying defendants, which incriminated this defendant.

At about 5:30 A.M., on December 11, 1982, a neighbor summoned the police to the apartment of Mr. Alphonse Randolph (Mr. Randolph), which was on the second floor of a brownstone, located at 405 Manhattan Avenue, New York County. Inside the apartment, which was in disarray, the police found the dead bodies of Mr. Randolph and Mr. Ernest Davis (Mr. Davis), and while Mr. Randolph's wrists and feet had been tied behind his back with telephone wire, Mr. Davis' hands were bound behind his back with an electric cord from a lamp.

Subsequent autopsies indicated that the causes of death were one gunshot wound to the head of Mr. Randolph, and two gunshot wounds to the head of Mr. Davis. During the autopsies, the Medical Examiner recovered three bullets from the bodies. Thereafter, a police ballistics expert compared the three bullets, and concluded that they had been fired from the same .25 caliber automatic pistol. As a result of finding gunpowder residue and bullet holes on and in pillows, which were lying near the bodies of Messrs. Randolph and Davis, the police concluded that the killer had probably shot the victims through these pillows, and had used them to muffle the sound of the gunshots.

Prior to his death, Mr. Randolph was a drug dealer, and he conducted his illicit drug transactions in the apartment's kitchen. It was reputed that Mr. Randolph usually kept, *inter alia,* large amounts of cash, drugs, and a large collection of watches in the apartment.

On or about December 28, 1982, which was less than three weeks after the double homicide, the police arrested defendant and Mr. Jeffrey Waldo (Mr. Waldo), based upon information provided to them by an informant, who claimed to have

overheard defendant and Mr. Waldo discussing the subject murders. Subsequent to their arrests, defendant and Mr. Waldo, after being advised of their *Miranda* rights, both made written and videotaped confessions.

Since those confessions implicated Mr. Thomas Pitts (Mr. Pitts), shortly thereafter the police also arrested him. Following his being advised of his *Miranda* rights, Mr. Pitts also made written and videotaped confessions.

Our examination of these confessions, in substance, indicates to us that, while the defendant and Messrs. Waldo and Pitts agreed that they intended to commit a robbery, they disagreed as to what their roles were in the murders. Set forth *infra* is a synopsis of these confessions.

Defendant, who was approximately 20 years of age at the time of the incident, stated that on the evening of December 10, 1982, Mr. Waldo came to defendant's home in Staten Island, and asked defendant whether he would like to participate in the robbery of Mr. Randolph, who was a Manhattan drug dealer. During their discussion, Mr. Waldo advised defendant that they would not need weapons, since Mr. Randolph was old, and would be alone in his apartment. Moreover, Mr. Waldo assured defendant that, although his role in the robbery would be to simply stand in the hallway outside of the apartment and act as a lookout, he would share in the proceeds. Defendant agreed to participate, and he contends that at that point "I didn't have no idea that [there] was gonna *[sic]* be a gun involved". Thereafter, defendant accompanied Messrs. Waldo and Pitts in an automobile to Mr. Randolph's Manhattan apartment, where they arrived at about midnight. According to defendant, he met Mr. Pitts for the first time on the night of the robbery. Prior to leaving for Manhattan, Mr. Pitts informed defendant that defendant would be the lookout, while Mr. Waldo would tie up Mr. Randolph, and Mr. Pitts would rob the apartment, since Mr. Pitts knew where to find everything. When they arrived, Mr. Randolph let them into the apartment. Once inside, Mr. Pitts shoved Mr. Randolph, who was about 50 years old, against the wall, and then they saw another younger man, who was Mr. Davis, in the apartment. As he stood in the doorway, defendant noticed Mr. Pitts "had his hand inside his pocket, as if he had a gun". The defendant thought Mr. Pitts was "just bluffing * * * [l]ike he had a gun being that there was another man in there". Subsequently, Mr. Pitts directed defendant to tie up Mr. Randolph, which he did, and he believed

Mr. Waldo tied up Mr. Davis. Thereafter, while defendant stood in the doorway watching the hallway, Messrs. Waldo and Pitts ransacked the apartment and, *inter alia,* removed money, drugs and jewelry. As soon as Messrs. Waldo and Pitts finished going through the apartment, defendant claimed he was ready to leave. However, now both Messrs. Waldo and Pitts exclaimed that the victims knew them. Thereupon, Mr. Pitts put pillows over the heads of the victims, and shot each one of them in the head with a small black gun that he took out of his pocket. Following the shootings, they fled and divided the robbery proceeds on their way back to Staten Island. Emphatically, defendant claimed that only Mr. Pitts had a gun during the robbery, and "I [defendant] didn't know nothin' *[sic]* about the gun until we got there [Mr. Randolph's apartment]".

Mr. Waldo stated in his confession that he, defendant and Mr. Pitts went to Mr. Randolph's apartment and bought drugs from him. Following this drug transaction, they decided to rob Mr. Randolph, and, therefore, they returned to his apartment. As soon as they were back in the apartment, Mr. Pitts drew a gun, and defendant tied up Mr. Randolph, while Mr. Pitts tied up Mr. Davis. Thereafter, Mr. Waldo and defendant searched the apartment for money and drugs. Before leaving, Mr. Pitts said he knew Mr. Davis from jail. Therefore, Mr. Pitts, after covering the heads of both victims with pillows, shot them in the head. On the way back to Staten Island, the proceeds of the robbery was split among Messrs. Waldo and Pitts and defendant. Although Mr. Waldo contended only Mr. Pitts had a gun, he claimed Mr. Pitts had talked about and displayed that gun during the automobile ride to Mr. Randolph's apartment.

Mr. Pitts confessed, in substance, that he, Mr. Waldo and defendant went to Mr. Randolph's apartment to rob him. However, Mr. Pitts contended that only Mr. Waldo and defendant, who planned the robbery, were armed with guns, and Mr. Waldo had a .25 caliber automatic, while defendant had a shotgun. Furthermore, Mr. Pitts claimed he was the lookout, and Mr. Waldo fired the fatal shots. Moreover, Mr. Pitts stated defendant announced the "stick-up", tied up Mr. Randolph, and helped search the apartment along with Mr. Pitts. Finally, Mr. Pitts admitted sharing in the robbery proceeds.

By indictment number 34 of 1983, filed on January 10, 1983, a New York County Grand Jury charged, in substance, that defendant and Messrs. Waldo and Pitts murdered Messrs.

Randolph and Davis in the course of a robbery. Specifically, the nine-count indictment charged the defendant, and Messrs. Waldo and Pitts, under theories of intentional and felony murder, with four counts of murder in the second degree (Penal Law § 125.25 [1], [3]); robbery in the first degree, as an armed felony (Penal Law § 160.15 [2]); burglary in the first degree, as an armed felony (Penal Law § 140.30 [1]); two counts of criminal use of a firearm in the first degree, as an armed felony (Penal Law § 265.09 [1]); and criminal possession of a weapon in the second degree, as an armed felony (Penal Law § 265.03).

Following their indictment, defendant and codefendants, in substance, moved to suppress their confessions and for separate trials or a severance, upon the basis that a joint trial would be prejudicial, since their defenses were antagonistic. After a hearing, those motions were denied.

Pursuant to CPL 200.40, the prosecution of two or more persons charged with the same offense or offenses may be joined for trial. However, contained in this section of the CPL is a provision (see, CPL 200.40 [1]), which permits a court, upon motion, to order separate trials, when, in substance, a joint trial will unduly prejudice an accused.

While an application for a severance is addressed to a trial court's discretion, and its ruling on that motion will normally not be disturbed, such discretion is not absolute, since "[a] retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning" (People v Fisher, 249 NY 419, 427 [1928]).

On May 14, 1984, a joint jury trial of the defendant and his codefendants commenced. At this trial, where neither defendant nor his codefendants testified, the trial court, over defendant's objection, admitted into evidence, with limiting instructions, the codefendants' confessions, which incriminated defendant. Thereafter, on May 30, 1984, the jury found defendant and his codefendants guilty on all counts.

Before us, the defendant contends, in substance, that the trial court erred, when it permitted the confessions of the nontestifying codefendants to be received into evidence, since that ruling denied the defendant his constitutional right to confront and cross-examine the witnesses against him.

A defendant's right of confrontation is guaranteed by both the United States (see, US Const 6th Amend) and the New York (see, NY Const, art I, § 6) Constitutions. The United

States Supreme Court in *Pointer v Texas* (380 US 400, 403 [1965]) held that the Fourteenth Amendment makes applicable to the States the Sixth Amendment's right of confrontation, since it is a fundamental right, which is essential to a fair trial. Furthermore, the United States Supreme Court ruled in *Douglas v Alabama* (380 US 415 [1965]) that the right of confrontation includes the right to cross-examine.

In 1968, the United States Supreme Court in *Bruton v United States* (391 US 123 [1968]) decided that, in a joint criminal trial, the admission into evidence, even with limiting instructions by a trial court, of a confession of a nontestifying codefendant, which incriminated a defendant, violates the incriminated defendant's right of confrontation. The *Bruton* court stated *(supra,* at 137): "Here the introduction of [codefendant's] confession posed a substantial threat to [defendant's] right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard [codefendant's] inadmissible hearsay evidence inculpating [defendant], in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for [defendant's] constitutional right of cross-examination. The effect is the same as if there had been no instruction at all".

Subsequently, the United States Supreme Court in *Parker v Randolph* (442 US 62 [1979]) carved out a significant exception to the rule enunciated in *Bruton v United States (supra).* This exception, in substance, meant that there was no violation of the Confrontation Clause, when, in a joint trial, the defendant's own confession was admitted into evidence, and it "interlocked" with the confession of a nontestifying codefendant, also admitted into evidence, which implicated defendant. In pertinent part, the *Parker* court *(supra,* at 74-75) justified this exception as follows: "[W]hen the defendant's own confession is properly before the jury, we believe that the constitutional scales tip the other way. The possible prejudice resulting from the failure of the jury to follow the trial court's instructions [concerning the nontestifying codefendant's confession] is not so 'devastating' or 'vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions. We therefore hold that admission of interlocking confessions with proper limiting instructions conforms to the requirements of the [Confrontation Clause]".

Following the *Parker v Randolph* decision *(supra),* our Court

of Appeals in *People v Smalls* (55 NY2d 407, 415 [1982]) held that the confession of a defendant interlocked with a confession of a nontestifying codefendant, which incriminated him, when both confessions "are substantially similar".

While the instant appeal was pending, the United States Supreme Court had occasion to again examine this subject in the case of *Cruz v New York* (481 US 186, 107 S Ct 1714 [1987]). In *Cruz (supra,* 481 US, at —, 107 S Ct, at 1718), that court expressly overruled *Parker v Randolph (supra)* and decided *(supra,* 481 US, at —, 107 S Ct, at 1719): "[W]here a non-testifying codefendant's confession incriminating the defendant is not directly admissible against the defendant * * * the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him".

Upon the basis of the rejection of *Parker v Randolph (supra),* the People, at page 19 of their respondent's brief, "acknowledge that the admission at defendant's trial of the non-testifying co-defendants' confessions violated the confrontation clause". However, the People contend that, regardless of the violation of the Confrontation Clause, based on the facts of this case, the error was harmless.

We disagree.

The majority opinion in *Cruz (supra,* 481 US, at —, 107 S Ct, at 1719) contains a harmless error analysis, which states, in pertinent part: "Of course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him * * * despite the lack of opportunity for cross-examination * * * and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless".

Before an error involving a Federal constitutional right, such as for example the Confrontation Clause, can be found to be harmless, "[a] court must be able to declare a belief that [the error] was harmless *beyond a reasonable doubt" (Chapman v California,* 386 US 18, 24 [1967]; emphasis supplied).

Since our review of the evidence in this case indicates that the proof is far from overwhelming concerning defendant's guilt in this case, we find that the error of the trial court in admitting into evidence the confessions of the nontestifying codefendants was not "harmless beyond a reasonable doubt" *(Chapman v California, supra,* at 24).

In other words, we find no direct evidence that indicates defendant either intended or "[h]ad [any] reasonable ground to believe that [his codefendants] intended to engage in conduct likely to result in death or serious physical injury" (Penal Law § 125.25 [3] [d]). As discussed *supra,* defendant in his own confession contended he believed the robbery was to be accomplished without weapons, and it was not until he was in Mr. Randolph's apartment that he was made aware of the presence of a gun.

Based upon our analysis *supra,* "we are unwilling to conclude that there is no reasonable possibility that the [admission of the confessions of the codefendants did not contribute] * * * to the guilty verdict against [defendant]" *(People v Smalls, supra,* at 416).

The Court of Appeals has recently reversed the conviction of Mr. Pitts and remanded for a new trial, as to all counts of which he was convicted in this case *(People v Pitts,* 71 NY2d 923).

Accordingly, judgment, Supreme Court, New York County (Clifford A. Scott, J., at hearing, trial and sentence), entered June 26, 1984, which convicted defendant, after a jury trial, of two counts of murder in the second degree (Penal Law § 125.25 [1] [intentional murder]), two counts of murder in the second degree (Penal Law § 125.25 [3] [felony murder]), robbery in the first degree (Penal Law § 160.15 [2]), burglary in the first degree (Penal Law § 140.30 [1]), two counts of criminal use of a firearm in the first degree (Penal Law § 265.09 [1]), and criminal possession of a weapon in the second degree (Penal Law § 265.03), and sentenced him to indeterminate terms of imprisonment from 25 years to life for each one of the four counts of murder in the second degree, from 12½ to 25 years for each one of the counts of robbery in the first degree, burglary in the first degree, and the two counts of criminal use of a firearm in the first degree, and 5 to 15 years on the count of criminal possession of a weapon in the second degree, all sentences to run concurrently with each other, is unanimously reversed, on the law and on the facts, judgment vacated, and the matter is remanded for a new trial.

SULLIVAN, J. P., ASCH, MILONAS and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 26, 1984, unanimously reversed, on the law and on the facts, and the matter remanded for a new trial.