THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MONAWAR HUSSAIN, Appellant.

Second Department, April 15, 1991

### APPEARANCES OF COUNSEL

*Philip L. Weinstein (David A. Crow* of counsel), for appellant.

*Charles J. Hynes, District Attorney (Jay M. Cohen, Anthea H. Bruffee* and *Florence M. Sullivan* of counsel), for respondent.

### OPINION OF THE COURT

MANGANO, P. J.

The question to be answered on this appeal is whether the defendant was denied his constitutional right to confront witnesses during his trial. In our view, the question must be answered in the affirmative.

I

The defendant and his codefendant Abdul Quyyum *(see, People v Quyyum,* — AD2d — [decided herewith]) were jointly tried on an indictment charging them, *inter alia,* with selling heroin to an undercover officer on November 26, 1986.

During the trial, undercover officer number 946 testified as to certain preliminary meetings that he had with the nontestifying codefendant Quyyum. Undercover officer number 946 testified that at one of these meetings with Quyyum, the negotiations broke down because Quyyum stated to him that "his boss", who was "his cousin", had ordered him to deal only with fellow Pakistanis or other Moslems.

The record further indicates that on November 26, 1986, Quyyum met undercover officer number 27862 in a bar on Newkirk Plaza. Quyyum discussed the transaction with undercover officer number 27862 for about one-half hour. Both men went into the bathroom to count out the money that undercover officer number 27862 had brought for the purchase. Undercover officer number 27862 was then allowed to testify on direct that Quyyum had stated to him that the sale had to take place in a car parked outside the bar because Quyyum's "cousin", who was in the car with the drugs, was "nervous", and did not want to come into the bar. On redirect examination, undercover officer number 27862 again testified that

Quyyum stated that "his cousin is in the car with the stuff". Quyyum and undercover officer number 27862 then left the bar, went to the car, and got into the back seat. The defendant was sitting in the front seat. Quyyum spoke to the defendant in a foreign language which the undercover officer did not understand, whereupon the defendant reached under the driver's seat and handed the undercover officer a plastic bag containing white powder. Several moments later, the defendant and Quyyum were arrested. They were jointly tried.

## II

Despite the limiting instruction given by the trial court (i.e., that Quyyum's statements were only binding against him), it is our view that the defendant's constitutional right to confrontation was violated by the undercover officer's testimony on direct and redirect examination as to the codefendant Quyyum's statements concerning the presence of his "cousin" in the car with the drugs. The People do not contend that those statements were admissible against the defendant under any recognized exception to the hearsay rule. Rather, they contend that the admission of the statements did not prejudice the defendant because they did not specifically refer to him.

In *People v Wheeler* (62 NY2d 867), the defendant was tried jointly with his brother for the crime of murder in the second degree. The brother made a pretrial statement, in which he implicated the defendant as a participant in the robbery which led to the victim's death. The trial court allowed this statement into evidence in redacted form. Although references to the defendant by name had been eliminated from the codefendant's statement, the evidence before the jury, both in the form of the actual redacted statement and the police officer's testimony to its substance, contained neutral references by the codefendant to another participant in the crime, viz., "We got to the track * * * I said * * * let's watch the cashiers window to see if somebody made a big hit and we will roll them", and "we did not talk about the shooting that night" *(People v Wheeler, supra,* at 869).

In reversing the defendant's conviction, the Court of Appeals rejected the People's contention that the use of a neutral pronoun in the redacted statement of the codefendant sufficiently safeguarded the defendant's constitutional right to confront witnesses. Specifically, the Court of Appeals held:

"We conclude that the codefendant's statement was not

admissible on the joint trial, and that defendant's application to sever his trial should have been granted. When an extrajudicial statement by one defendant contains incriminating references to another defendant, admission of that statement upon their joint trial deprives the nonconfessing defendant of his right to confront the witness against him unless that witness also testifies at the joint trial *(Bruton v United States,* 391 US 123). If the confession, however, can be effectively redacted so that the jury would not interpret its admission as incriminating the nonconfessing defendant, it may be utilized at the joint trial *(People v Smalls,* 55 NY2d 407; *People v Boone,* 22 NY2d 476). The burden of effective redaction rests, of course, with the People.

"The People assert that the references to another participant in the codefendant's statement would not necessarily be viewed by the jury as referring to defendant. The People point to the testimony at trial to the effect that yet a third person may have participated in the crime and argue that the jury might have viewed collective references in the confession as concerning this additional participant. The possibility that the jury may have viewed the incriminating references in this manner is insufficient to eliminate the prejudice to defendant from the use of this statement upon his trial. Given that the two brothers were being tried for the crime together, we believe the confession could only be read by the jury as inculpating defendant *(People v Geoghegan,* 68 AD2d 279, affd 51 NY2d 45). Its admission on the joint trial was therefore error" *(People v Wheeler, supra,* at 869).

Nor does the decision of the United States Supreme Court in *Richardson v Marsh* (481 US 200), compel a different conclusion. In *Richardson v Marsh (supra)* the defendant Marsh and one Benjamin Williams were tried jointly for the crimes of murder and assault. During the trial, Williams' confession was admitted into evidence but was redacted to omit any possible reference to Marsh. Indeed, it referred only to Williams and a third person, one Kareem Martin, who was a fugitive at the time of trial. Williams' confession described a conversation with Martin in a car, as they drove to the victim's house on October 29, 1978, at about 6:30 P.M. The defendant testified in her own behalf, and admitted that she was in the car with Williams and Martin on that night but denied hearing their conversation or having an intent to commit the crimes. The trial court instructed the jury that Williams' confession was not to be considered against Marsh.

The United States Supreme Court upheld Marsh's conviction, stating: "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process. On the precise facts of *Bruton,* involving a facially incriminating confession, we found that accommodation inadequate. As our discussion above shows, the calculus changes when confessions that do not name the defendant are at issue. While we continue to apply *Bruton* where we have found that its rationale validly applies * * * we decline to extend it further. We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence" *(Richardson v Marsh, supra,* at 211). However, the United States Supreme Court immediately thereafter issued the following caveat "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun" *(Richardson v Marsh, supra,* at 211, n 5).

Viewed within this context, it is clear that the holding of *People v Wheeler* (62 NY2d 867, *supra),* is still controlling in this State, and mandates the reversal of the defendant's judgment of conviction *(see also, People v Cruz,* 121 Ill 2d 321, 521 NE2d 18, *cert denied* 488 US 869).

It is true that, subsequent to the United States Court decision in *Richardson v Marsh* (481 US 200, *supra),* this court has rejected similar arguments by other defendants. However, in all of those cases, there was testimony adduced which indicated that numerous other individuals participated in the crimes charged. Therefore, the neutral terms used in the redacted confessions of the codefendants in those cases would not have been understood by the juries involved as inculpating the defendants therein *(see, e.g., People v Sutter,* 162 AD2d 644 [the terms "my friend", "they" and "three guys" were used in the redacted confession of the codefendant and the jury heard testimony that at least 12 individuals participated in the crime]; *People v Kern,* 149 AD2d 187, *affd* 75 NY2d 638, *cert denied* — US —, 111 S Ct 77 [the words "others" or "another" were used in the redacted codefendant's confession, and there was testimony that approximately a dozen youths were in-

volved in the crime]; *People v Marcus,* 137 AD2d 723 [the words "another male" were used in the redacted codefendant's confession, but could have been understood by the jury as referring to another jointly tried codefendant or even to two other men who were involved in the robbery]).

The error in the instant case, which is of constitutional magnitude, cannot be considered harmless. With respect to the first three counts of the indictment, upon which the defendant was found guilty, the trial court did not instruct to the jury with respect to the automobile presumption contained in Penal Law § 220.25 (1). The only evidence of the defendant's guilt was his mere presence in the front passenger seat of the car when the drug transaction was consummated and the fact that, after the codefendant Quyyum said something to him in a foreign language which the undercover officer did not understand, the defendant retrieved a plastic bag containing white powder from under the driver's seat and handed it to the undercover officer *(see, People v Wheeler, supra; People v Crimmins,* 36 NY2d 230, 237; *Harrington v California,* 395 US 250; *People v Smalls,* 55 NY2d 407; *see also, Bruton v United States,* 391 US 123, 135-136). Accordingly, the judgment of conviction must be reversed and a new trial ordered.

### III

We have reviewed the defendant's remaining contentions and find them to be unpreserved for appellate review or without merit *(see, People v Taylor,* 76 NY2d 873; *People v Medina,* 53 NY2d 951, 953; *People v Payne,* 135 AD2d 746; *People v Arce,* 42 NY2d 179, 190-191; *People v Suitte,* 90 AD2d 80).

BROWN, SULLIVAN and EIBER, JJ., concur.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.