■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PARIS BURNS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Westchester County (Reilly, J.), rendered April 25, 1980, convicting him of robbery in the first degree (two counts) and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. Gerald Bruen, Mario Allen, Purcell Campbell and appellant were all indicted for various crimes arising out of a single incident, the gunpoint robbery of Paul Garrett and Edgar Cleveland. Each was charged with having acted in concert with the others in the commission of the crimes. The case against Bruen was severed at the People's request. Bruen has yet to come to trial. A Bench warrant issued

against him remains unexecuted. Upon the denial of his motion for a severance, appellant was tried with Allen, who was tried *in absentia*. They were both convicted of two counts of robbery in the first degree and one count of criminal possession of a weapon in the third degree. The case against Campbell was severed upon his motion. He was ultimately acquitted after a jury trial. On this appeal, one of appellant's primary contentions is that his right to be confronted by witnesses against him (US Const, 6th Amdt; NY Const, art I, § 6) was violated by the People's introduction, on their direct case, of a redacted confession by Allen which also served to inculpate defendant (see *Bruton v United States,* 391 US 123; *People v Berzups,* 49 NY2d 417). We agree. The evidence offered by the People tended to show that Cleveland and Garrett were engaged in a dice game at a playground when they were confronted by Bruen and Allen who robbed them at gunpoint, while appellant stood by the gate to the playground with his hands folded. There was also testimony that after the robbery, Bruen, Allen and appellant entered the same automobile which was then driven away. Shortly thereafter, police officers approached a parked automobile which was similar to the automobile which had been described as having been involved in the robbery. Bruen, Allen, Campbell, who was the driver, and appellant fled from the automobile, but were all apprehended in short order. Items of property stolen from the complainants were found on the persons of Bruen and Allen. A gun was found inside a plastic bag that was protruding from under the driver's seat. Most importantly, as to this appeal, the People also offered evidence of an oral statement by appellant and a written confession by Allen. One of the arresting officers testified that after he had given the *Miranda* warnings to appellant on the evening of his arrest, the appellant, in response to questioning, had stated as follows: "Yeah, I was there, but I didn't do anything. My man had the gun." Over appellant's objection, the People were thereafter permitted to introduce a redacted version of a signed written statement that the officer had obtained from Allen after advising him of his *Miranda* rights. The redacted statement, which was read to the jury by the prosecutor, stated as follows, in pertinent part: "[Appellant] yelled to me, Yo, pull that sh-- out. I stood there looking at him and he yelled at me again, 'Yo, ni---- , pull that joint out'. I pulled the gun out." Appellant did not testify. Allen, of course, was not even present at the trial. On summation, appellant's counsel argued, among other things, that the People had failed to prove that appellant shared the criminal intent of Bruen and Allen. She contended that, if the People's evidence against appellant were credited, it established at most that he had observed the robbery and then, out of fear that he would be wrongly implicated, had joined the robbers in their flight from the scene. The prosecutor countered that appellant had been "the lookout" and that his flight showed consciousness of guilt. The legal principles which are decisive of this case are set forth as follows by the Court of Appeals in *People v Berzups* (49 NY2d 417, 425, *supra):* "[T]his court has for some time made clear that the right of an accused to be confronted by the witnesses against him (US Const, 6th Amdt; NY Const, art I, § 6) is not violated when one of several defendants has himself made a full and voluntary confession which is 'almost identical' to the confession of his implicated codefendants *(People v McNeil,* 24 NY2d 550, 552; see *Parker v Randolph,* 442 US 62). As had the Supreme Court in *Bruton v United States* (391 US 123), we recognized that it is often not enough for the trial court to administer cautionary instructions that a jury is not to consider incriminating statements as evidence of guilt of anyone but the one who utters them. For, the admission of an extrajudicial confession of a defendant who, if he does not take the stand, remains beyond the scrutiny of cross-examination, deprives the codefendant who is implicated in that confession of his right to confrontation *(Bruton v*

*United States, supra,* at pp 127-128, 135-136). But while sensitive to the devastating potential of such prejudice, we have been unanimous in our realization that a codefendant's confession need not violate the spirit of the *Bruton* rule when the implicated defendant himself had made a confession close enough to the one offered against him to make the probability of prejudice so 'negligible' that in the end 'the result would need to be the same' *(People v Safian,* 46 NY2d 181, 188 [majority opn], 194 [dissenting opn citing *People v Fisher,* 249 NY 419, 426]). The justification for this exception is that separate confessions, without being mirror images of one another, may yet be so duplicative in their description of the crucial facts that the one of the nontestifying codefendant may be of no measurable consequence in the face of the overwhelming and largely uncontroverted evidence contained in the interlocking confession of the defendant himself *(Brown v United States,* 411 US 233; *Schneble v Florida,* 405 US 427; *Chapman v California,* 386 US 18)." Those principles, when applied to this case, required reversal of appellant's conviction for we cannot say that his statement was "close enough to the one [by Allen] offered against him to make the probability of prejudice so 'negligible' that in the end 'the result would need to be the same'". The confession by Allen inculpated appellant in an unambiguous fashion in that it attributed to him a command to Allen that the latter draw his gun. Such evidence flatly contradicted appellant's position at trial that he had merely observed the crimes. However, appellant's statement was ambiguous and could reasonably have been interpreted by the jury in a manner that did not serve to inculpate him. The only portion of appellant's statement which was arguably as inculpatory as the statement attributed to him by Allen was the sentence "My man had the gun". As appellant's counsel argued at a pretrial hearing, and the court seemed to recognize, "my man" is sometimes used as a colloquial expression. When so employed, it is used as a rough substitute for "that man there" or "that other man with whom you and I are acquainted". Thus, "my man" does not necessarily connote that the man referred to is controlled by or an agent of the speaker. In response to appellant counsel's argument that "my man" is a colloquial expression, and that his client's use of those words did not necessarily inculpate him, the court replied "That is why I am letting [the redacted confession] in. It is for [the jury] to decide". This was error. As indicated, the redacted confession of Allen was admissible in the joint trial, under an exception to the general rule, only if that confession and appellant's own statement were "so duplicative in their description of the crucial facts that the one of the nontestifying codefendant may be of no measurable consequence in the face of the overwhelming and largely uncontroverted evidence contained in the interlocking confession of the defendant himself" *(People v Berzups, supra,* p 425). In the case at bar, if the jury accepted appellant's contention that his statement amounted merely to a statement that he was at the scene of the crime and saw that one of the robbers had a gun, then the admission of Allen's statement that appellant had commanded him to use a gun assuredly was not so duplicative of appellant's statement that it was "of no measurable consequence" with respect to the jury's verdict in this case. Moreover, in such circumstances, it may not be presumed that the jury heeded the trial court's cautionary instruction not to consider Allen's statement as evidence of appellant's guilt (see *Bruton v United States,* 391 US 123, 135-136, *supra; People v Safian,* 46 NY2d 181, 187). Since we cannot say that the introduction of Allen's redacted confession was not prejudicial to appellant under the circumstances of this case, a new trial is required. We have examined appellant's remaining contentions and conclude that they are without merit. With respect to his Fourth Amendment claim, there is nothing in the record to suggest, and he has never asserted, that he had any possessory or other interest in the portion of

the automobile in which the gun was discovered which would have given him a legitimate expectation of privacy in that area. Accordingly, "[appellant] is precluded from contesting the instant search" *(People v McCloud,* 81 AD2d 645, 647; see *United States v Salvucci,* 448 US 83; *People v Smith,* 77 AD2d 544; *People v Ponder,* 77 AD2d 223, affd 54 NY2d 160). Margett, J.P., O'Connor, Weinstein and Thompson, JJ., concur.