■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH MILLER, Appellant. — Kane, J. Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered August 1, 1983, upon a verdict convicting defendant of the crime of murder in the second degree.

On April 15, 1983, defendant and Catherine Price were arrested on a conspiracy charge unrelated to the instant case. During interrogation on that charge, it was discovered that defendant, Catherine Price, Kenneth Baird and Nettie Price were involved in the arson of a house on March 9, 1983 in which a baby, Robert Homsey, Jr., was tragically killed. Defendant's conviction for second degree murder (felony murder), resulting from his alleged participation in the arson, is the subject of this appeal.

The events leading to the commission of the arson revolved around various problems between a daughter of Nettie Price and the children of a neighboring family in the City of Watervliet. After being advised of his rights, defendant signed a written confession wherein he stated, *inter alia,* that "[i]t was agreed upon that Ken Baird would set a small fire at the rear of the house and Cathy and Nettie Price would pay for the job in the amount of $50 to Ken". To this end, defendant and Baird used a hose from a washing machine to siphon gasoline from Catherine Price's car. The gasoline was then mixed with lighter fluid in a vinegar bottle. Thereafter, defendant and Baird set out to start

the fire. After pointing the neighbor's house out to Baird, defendant returned to Nettie Price's house to wait. It was later discovered that Baird set fire to the wrong house and that the 16-month-old baby had died as a result of the fire. Baird's written confessions, admitted into evidence only against him, tracked defendant's confession in all significant respects.

Defendant, after denial of his motion for a severance, was tried together with Baird and convicted of murder in the second degree, the only count of the indictment submitted to the jury. Although Catherine Price was originally tried with defendant and Baird, midway through the trial she pleaded guilty to a charge of attempted murder in return for a reduced sentence and testified, without objection, for the People. Apparently, Nettie Price was granted a separate trial. Defendant was sentenced to an indeterminate sentence of 25 years to life. This appeal by defendant ensued.

Defendant's first argument is that he was deprived of a fair trial by reason of the trial court's denial of his motion for a severance, "by reason of * * * *People v LaBelle,* 18 NY2d 405". The trial court denied defendant's motion for a severance, concluding that codefendant Baird's confession could be "effectively redacted" and admitted against Baird only, without prejudice to defendant. Further, the trial court held that, since defendant and Baird gave interlocking confessions, the confessions could properly be "introduced at a joint trial under instructions that each statement is to be considered only against the declarant". We are unable to conclude that the trial court abused its discretion by denying defendant's motion for a severance.

Where, as here, defendant's and Baird's confessions contain the same material facts, there is "no significant risk that either defendant would be improperly prejudiced by admission of his codefendant's confession" (*People v Safian,* 46 NY2d 181, 185, *cert denied* 443 US 912; *see also, People v Berzups,* 49 NY2d 417, 425). We note that the evidence of defendant's guilt was so overwhelming that Baird's confession, admitted solely against Baird, was "[e]ntirely superfluous to certitude as to [defendant's] guilt" (*People v Safian, supra,* p 187).

The fact that defendant was not permitted to introduce two letters sent to the court by codefendant Baird, which tended to exculpate defendant, or that these letters were received by the Trial Judge, does not change the result. To accept defendant's argument that the Trial Judge should have recused himself by reason of having received Baird's letters directly would permit a defendant to remove judges at whim. Therefore, such a showing does not suffice to establish that a judge is interested in the case

and surely is no reason to sever the trials. Moreover, defendant has shown no prejudice resulting from the Trial Judge receiving the letters directly. The Trial Judge sent the letters to the District Attorney with specific instructions to send copies to defendant.

As for precluding defendant from introducing Baird's letters at trial, it is well established that declarations against penal interest are an exception to the hearsay rule (*People v Brown,* 26 NY2d 88, 94). Equally well established, however, is that *the basis for the exception lies in the trustworthiness of such statements and, absent credentials of trustworthiness, such statements' admission is not warranted* (*People v Maerling,* 46 NY2d 289, 297-299). A review of the record in light of the above reveals that the trial court did not abuse its discretion in sustaining the prosecution's objection to the admissibility of the Baird letters (*supra*). In any event, it should be noted that defendant did not mention Baird's letters in his motion for a severance.

Defendant next asserts that the trial court abused its discretion by denying his motion to extend the time to serve and file a notice of intent to proffer psychiatric evidence. In this regard, CPL 250.10 (2) provides that: "Psychiatric evidence is not admissible upon a trial unless the defendant serves upon the people and files with the court a written notice of his intention to present psychiatric evidence. Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment. In the interest of justice and for good cause shown, however, the court may permit such service and filing to be made at any later time prior to the close of the evidence." In this case, defendant pleaded not guilty on April 22, 1983 and did not serve and file a written notice of his intent to present psychiatric evidence at trial until *July 11, 1983,* the first day of trial. Accordingly, since the notice was not served and filed within 30 days of his plea of not guilty, the issue on appeal distills to a consideration of whether the trial court abused its discretion in denying defendant's application to extend the time to serve and file his notice.

In his affidavit in support of defendant's application, defendant's attorney stated that his client's mental condition did not become known to him until near the end of the suppression hearing, held on *June 30* and *July 1, 1983*. When asked by the trial court on July 11, 1983 if he actually had any psychiatric evidence which would support a defense based upon mental disease or defect, defense counsel stated that he did not. Counsel explained that he needed a subpoena to get defendant's medical

records and that he had spoken with several psychiatrists, none of whom could examine defendant until August 1, 1983. The trial court denied defendant's application, stating, however, that "if you provide me with psychiatric evidence \* \* \* I'll reentertain your application".

After the People had rested, defendant presented a report prepared by a psychiatrist, Dr. Peter Mansky, who stated that "it seems likely" defendant has one of several psychiatric illnesses.* Dr. Mansky, however, did not examine defendant; instead, he relied *solely* upon defendant's history as related to him by defendant's attorney in making this diagnosis. Defendant's attorney explained that Dr. Mansky's schedule did not permit an examination until the weekend. The trial court then "strongly" suggested that Dr. Mansky examine defendant that night (July 14, 1983) and stated that, if tomorrow you "have psychiatric evidence to present, I'll let you present it". Dr. Mansky did not examine defendant that night and, accordingly, did not testify the next day. In addition, defense counsel explained that he did not subpoena defendant's medical records because he did not have a psychiatrist to review them.

Under the circumstances presented here, and particularly upon defendant's failure to substantiate in any meaningful manner a defense based on mental disease or defect despite being given ample opportunity to do so, we are unable to find that the trial court abused its discretion in denying defendant's application. We note that in *Ronson v Commissioner of Correction* (463 F Supp 97, 104, *affd* 604 F2d 176), the United States District Court for the Southern District of New York opined that: "it is appropriate to require a defendant who seeks to file notice of insanity after the statutory period has elapsed to make a showing that he possesses favorable evidence to support such a defense" (*cf. United States v Caplan,* 633 F2d 534).

Defendant's next and primary contention is that he was prejudiced by the plea bargain which took Catherine Price out of the case and required her to testify against him. This contention must be rejected.

Before Catherine Price testified, the trial court instructed the jury that she was "out of the case" and that "[y]ou were not to concern yourself with it further". Defendant made no objection and did not request further instruction. Further, defendant

---

* Specifically, Dr. Mansky opined that: "Among the differential diagnosis would be (1) anti-social personality disorder; (2) manic depressive illness with secondary anti-social disorder; (3) post traumatic stress syndrome. It cannot be ruled out that Mr. Miller has these disorders without examination of his psychiatric records and his present mental status."

made no objection when, on direct, the People questioned Price with respect to her plea. Therefore, having failed to object to the trial court's instructions or the prosecutor's reference to Price's plea bargain, no error of law, if any, was preserved for appeal (*see, People v Gaito,* 98 AD2d 909, 910) and we see no reason to reverse on this issue in the interest of justice. Moreover, a review of the record leads inexorably to the conclusion that severance of Price's prosecution during trial, in the absence of the jury, was not grounds for ordering a mistrial (*see, People v Mirenda,* 23 NY2d 439, 449-450).

Defendant's next contention is that the prosecutor's cross-examination of him with respect to his experience in the Vietnam War with "fire bombs" exceeded the scope of direct and, as such, constituted reversible error. The record, however, reveals that the questions contested herein were not objected to at trial. Accordingly, a review of this issue on the law is foreclosed (*People v Jones,* 99 AD2d 559, 560). We are further of the opinion that it would be inappropriate to reverse on this ground in the interest of justice (*supra; see also, People v Jones,* 58 AD2d 696, 697).

Turning to defendant's assertion that the prosecutor's remarks upon summation (i.e., referring to facts outside the record) constituted reversible error, we find that the trial court's rulings, which sustained defendant's objections, together with its instructions to the jury, ameliorated any prejudicial impact of the statements on defendant (*see, People v Williams,* 46 NY2d 1070; *People v Arce,* 42 NY2d 179). Moreover, in the context of this case, the prosecutor's remarks constituted harmless error and, therefore, a new trial based on this ground is unwarranted (*see, People v Crimmins,* 36 NY2d 230).

Finally, contrary to defendant's assertion, we find that the felony murder charge was properly submitted to the jury. The People were not required to prove defendant's intent to kill the Homsey baby. Rather, all that was required was that the People prove that defendant aided Baird in setting fire to the house, thereby resulting in the death of the infant (Penal Law § 125.25 [3]; *see, People v Miller,* 32 NY2d 157, 159). Here, the evidence was legally sufficient to satisfy that requirement. The judgment must be affirmed.

Judgment affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.