OPINION OF THE COURT
Lorraine S. Miller, J.
Defendant Larry Thomas, charged with the murder of his girlfriend, moved for suppression of bloodstained sneakers. The court denied the motion, with the decision to follow. At *761 the Mapp hearing held before this court, an issue of apparent first impression arose. (Mapp v Ohio, 367 US 643.) Based on the credible evidence the facts which gave rise to this issue were as follows:
On May 25, 1988, at approximately 8:00 p.m., Police Officer James McCabe discovered the body of the deceased, Eva Sawyer, lying on the bedroom floor in her 826 Crown Street apartment. The deceased had been beaten and stabbed five times. There was no sign of forced entry as the officer found all windows locked except the bedroom window leading to the fire escape.
On May 26, 1988, at 12:30 p.m., after receiving information concerning the close relationship between defendant and deceased, Detective Richard Lee went to defendant’s home and told him that deceased had been murdered. Defendant then voluntarily accompanied the detective to the precinct for further questioning.
At the station house, defendant told Detective Lee and Police Officer McCabe that he had known the deceased since January 1988 and they had been lovers; that the relationship was "one-sided” and that he had been trying to end it. Defendant stated that he had last seen decedent Sunday, May 22, 1988, at 11:30 a.m., when he helped her start her car, and at about 6:00 p.m., when he and his brother had visited her for a few minutes. Defendant also stated that on May 25, 1988, the day of the murder, he had spent the night with another woman.
During this interview, the officers noticed spots on defendant’s sneakers which appeared to be bloodstains. Defendant contended that the spots were "dirt from a newly planted tree”. Defendant denied that the stains were blood and handed one of the sneakers to Police Officer McCabe for closer inspection. When the officers decided that the stains were indeed blood, they asked defendant to relinquish both sneakers. Defendant refused and asked to use the bathroom. The officers, fearing that defendant might attempt to wash the spots off the sneakers, told him he could use the bathroom provided he left the sneakers with them. Defendant did not use the bathroom, but surrendered his sneakers. He asked to telephone his mother, which request was granted.
Shortly thereafter, an attorney called Detective Lee and told him to cease questioning defendant. The police complied. A partner of defendant’s attorney Arrived at the precinct later *762 that afternoon, and demanded the sneakers’ return. The officers refused. Defendant then left the station house with his attorney.
This case presents a novel issue of law, namely: Is probable cause to believe an item of clothing is evidence of criminality sufficient to justify its warrantless seizure? No reported case seems to squarely address this issue although several cases have either upheld or invalidated seizures of clothing depending upon whether there was probable cause to arrest defendant, exigent circumstances, plain view, consent or a search pursuant to a search warrant (People v Berzups, 49 NY2d 417 [seizure of fingernail scrapings and blood spattered shoes permissible as search incident to arrest]; People v Watson, 100 AD2d 452 [seizure of bloodstained rubber boots and pliers permissible under plain view doctrine]; Commonwealth v Meehan, 377 Mass 552, 387 NE2d 527 [seizure of bloodstained sneakers upheld on basis of consent and plain view]).
The United States Supreme Court has considered a variation of this issue on one occasion without a clear enunciation of a governing rule. In Cupp v Murphy (412 US 291), defendant voluntarily appeared at a police precinct with counsel for questioning in connection with the strangulation/murder of his estranged wife. During the interview, the officers noticed a dark spot on Murphy’s finger. Suspecting that it might be dried blood, the police requested a sample scraping from his fingernails. When he refused, the police took the sample. Both the lower courts and the Supreme Court found that the police had had sufficient probable cause to arrest defendant although they chose not to formally arrest him until approximately one month later. The court held that the search was constitutionally permissible:
"We believe this search was constitutionally permissible under the principles of Chimel v. California * * *. Chimel stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest * * *. The basis for this exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession * * *
"Where there is no formal arrest, as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating *763 evidence on his person. Since he knows he is going to be released, he might be likely instead to be concerned with diverting attention away from himself Accordingly, we do not hold that a full Chimel search would have been justified in this case without a formal arrest and without a warrant. But the respondent was not subjected to such a search.
"At the time Murphy was being detained at the station house, he was obviously aware of the detectives’ suspicions. Though he did not have the full warning of official suspicion that a formal arrest provides, Murphy was sufficiently apprised of his suspected role in the crime to motivate him to attempt to destroy what evidence he could without attracting further attention. Testimony at trial indicated that after he refused to consent to the taking of fingernail samples, he put his hands behind his back and appeared to rub them together. He then put his hands in his pockets, and a 'metallic sound, such as keys or change rattling’ was heard. The rationale of Chimel, in these circumstances, justified the police in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails” (at 295-296; emphasis supplied).
Cupp (supra), therefore, upholds the search. It appears to authorize a very limited search as distinguished from a full search (incident to an arrest) provided the police have sufficient probable cause to arrest a person and the suspect is in the actual process of destroying "highly evanescent evidence”. While the case at bar certainly involves "highly evanescent evidence”, it is distinguishable from Cupp, since the police herein did not yet have probable cause to arrest defendant. This distinguishing feature lies at the heart of the defense position.
The defense argues that the police had to either effectuate an arrest or at least had probable cause to do so at that time in order to seize the sneakers. This court disagrees. Under Cupp (supra), the instant warrantless seizure was not violative of defendant’s Fourth Amendment rights. Probable cause to believe the stains on the sneakers were evidence of criminal behavior is sufficient to justify the seizure without the necessity of probable cause to arrest. (Warden v Hayden, 387 US 294.)
The officers reasonably suspected that the assailant was known to the deceased (since there had been no sign of forced entry), that deceased had been stabbed and that defendant (by *764 his own admission) was the last person to have seen Ms. Sawyer alive and had visited deceased with a desire to end their love affair. Both officers were sufficiently experienced and easily identified the stains as blood. Once they imparted their suspicion to defendant^ he fabricated a story concealing the true nature of the stains. This fabrication was a clear indication of defendant’s consciousness of guilt.
Additionally, once defendant realized that the officers suspected him, he immediately asked to use the bathroom, making the possibility of destruction of the evidence seem imminent. The stains themselves, although "mere evidence,” are "evanescent evidence”. (Warden v Hayden 387 US 294, supra; Cupp v Murphy, 412 US 291, supra.) They were, no doubt, "subject to the exigency of easy eradication”. (People v Berzups, 49 NY2d 417, supra.) Under these exigent circumstances, immediate warrantless seizure was justified. Indeed, their immediate seizure was the only viable alternative given the possibility of their imminent destruction.
The court also finds an immediate arrest or defendant’s detention at the precinct until the police had probable cause to do so would have been even more violative of defendant’s rights than the steps taken by the police in the instant case. The detention and thus seizure of a person is rarely justifiable on less than probable cause. Furthermore, the Court of Appeals, in adopting Cupp, has held that an arrest is not necessary to justify the seizure of evidence (Matter of Abe A, 56 NY2d 288). The court stated (supra, at 296-297),
"This also may be a good juncture at which to express our disagreement with the Appellate Division’s conclusion that a formal charge that he had committed the crime was a prerequisite for the judicial directive that Jon L. make himself available for the drawing of the blood. We can find no case in which a court of general jurisdiction has been held to be without power to authorize a seizure or a search until a suspect is arrested and actually charged with a crime (cf. Zurcher v Stanford Daily, 436 US 547). So, in Cupp v Murphy, (412 US, supra, at p 294), the Supreme Court held the seizure of the fingernail scrapings there permissible though the defendant had not been 'formally arrested’ * * *.
"Pragmatically put, rThere is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a *765 suspect * * *. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.’ (Hoffa v United States, 385 US 293, 310.)” (Emphasis supplied.)
It would have taken many hours or days for the police to have either confirmed or dispelled defendant’s alibi. This court fails to see how the further detention, which an arrest would entail, would have been any more protective of defendant’s rights or have obviated any need for the immediate seizure of the evidence. It is clear, therefore, that under the exigencies of this case, the contention by the defendant that the police were required to arrest defendant or have probable cause to do so in order to seize the sneakers is without merit as is his contention that suppression is required because the police failed to obtain a warrant via telephone (see, CPL 690.36). Such latter argument ignores the exigencies of the case. Assuming that a warrant by telephone could have been obtained in a reasonable time (a procedure rarely used because of its cumbersome nature, logistically) the police would have had to forcibly restrain the defendant in order to prevent him from washing or rubbing the stains off the sneakers or would have had to seize the sneakers in order to ensure that the stains remained intact. Therefore, any attempt to obtain a warrant might have been either more intrusive than or as intrusive as the officers’ chosen course of action.
Finally, the record is devoid of any evidence that the police violated defendant’s right to counsel. Neither defendant’s original attorney or his partner testified at the hearing nor was there before this court any evidence that statements made by defendant were anything less than the product of his own free will. The court credits the officers’ testimony that once they were told to stop questioning defendant they complied. At no time did defendant ask to consult with an attorney and the record is silent on the issue of who summoned the attorneys. Under these circumstances, suppression of the sneakers on the ground of right to counsel is unwarranted (see, People v Johnson, 48 NY2d 565).
Defendant’s motion to suppress the bloodstained sneakers is denied for the reasons stated herein.