HELENE N. WHITE, Circuit Judge,
concurring.
I join in the affirmance because I agree that Starks has not met AEDPA’s demanding standard for relief. I write separately because I conclude that properly applied, the Supreme Court’s cases establish that Starks’s sentence violates the Eighth Amendment.
In Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Supreme Court held that the Eighth Amendment “prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.” Id. at 82, 130 S.Ct. 2011. The state “need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.” Id. (emphasis added). The Court grounded this decision in “[cjommunity consensus,” “the limited culpability of juvenile nonhomicide offenders,” “the severity of life without parole sentences,” and a determination that “peno-logical theory is not adequate to justify life without parole for juvenile nonhomicide offenders.” Id. at 67, 74, 130 S.Ct. 2011. The Court explained that none of the “goals of penal sanctions that have been recognized as legitimate”—“retribution, deterrence, incapacitation, and rehabilitation”—provides a sufficient basis for sentencing juveniles to a lifetime of incarceration. Id. at 71, 130 S.Ct. 2011 (citing, inter alia, Roper v. Simmons, 543 U.S. 551, 571-72, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)).
Two years later, in Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the Court held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders” convicted of homicide offenses. Id. at 2469. Before “imposition of that harshest prison sentence,” a sentencing court must “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. Otherwise, the Court explained, sentencing a juvenile homicide offender to “lifetime incarceration without possibility of parole” is cruel and unusual punishment. Id. at 2475. The Court rooted this conclusion in Graham, and quoted Graham’s explanation that a prohibition on life without parole means that a state “must provide ‘some meaningful opportunity to obtain release.’ ” Id. at 2469 (quoting Graham, 560 U.S. at 74, 130 S.Ct. 2011). Together, Graham and Miller establish that the Eighth Amendment prohibits a sentencing regime that mandates a term of life imprisonment for juvenile homicide offenders without a meaningful opportunity to obtain release. Id. at 2460, 2469.
Starks was convicted of first-degree felony murder, in violation of Tenn. Code Ann. § 39-13-202, and attempted especially aggravated robbery, in violation of Tenn. Code Ann. §§ 39-12-101 and 39-13-403, for a robbery-murder committed when he was a juvenile. He was sentenced to life imprisonment. In Tennessee, a defendant who has been sentenced to paroleable life in prison must serve 60 years of his sentence before he is eligible for release on parole. Tenn. Code Ann. §§ 39-13-204(a), (f)(1), 40-35-501(h)(l), (i); Vaughn v. State, 202 S.W.3d 106, 118-20 (Tenn. 2006). However, because a prisoner serving a life *282 sentence is eligible for up to 9 years’ worth of good-time credit, the absolute minimum term of confinement is 51 years. Tenn. Code Ann. §§ 40-35-501(i)(l), 41-21-236; Vaughn, 202 S.W.3d at 118-20. Thus, a 17-year-old convicted of first-degree murder and sentenced to life imprisonment would be eligible for release—assuming maximum credit—at age 68.
Even without his consecutive 11-year sentence for the robbery offense,[1] Starks’s life’ sentence for murder does not provide a meaningful opportunity for release. Data from the Centers for Disease Control and Prevention show that the life expectancy for black men in the United States—like Starks—was 71.8 years in 2010. R. 47-4, CDC Data Brief, PID 994, 996. And data from the Department of Justice show that state prisoners age 55 to 64 had death rates 56% higher than the general population from 2001 to 2004. Starks Br. 8 (citing *283 Christopher J. Mumola, Bureau of Justice Statistics, No. NCJ 216340, Medical Causes of Death in State Prisons, 2001-2004 (Jan. 2007), http://www.bjs.gov/ content/pub/pdf/mcdsp04.pdf). Here, where Starks would become eligible for release at age 68 at the earliest, and even then only with maximum credit for good behavior, he has been deprived of a “ ‘meaningful opportunity to obtain release’ ” during his lifetime. Miller, 132 S.Ct. at 2469 (quoting Graham, 560 U.S. at 74, 130 S.Ct. 2011).
This conclusion is supported by state-court decisions setting aside as cruel and unusual lengthy sentences that approach or exceed a defendant’s life expectancy, regardless whether that sentence bears the title “life without parole.” See, e.g., People v. Caballero, 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291, 268 (2012); People v. Rainer, No. 10CA2414, 2013 WL 1490107, at *15 (Colo. Ct. App. Apr. 11, 2013); Casiano v. Comm’r of Corr., 317 Conn. 52, 115 A.3d 1031, 1047-48 (2015); Henry v. State, 175 So.3d 675, 676, 680 (Fla. 2015); State v. Null, 836 N.W.2d 41, 72 (Iowa 2013); Parker v. State, 119 So.3d 987, 997 (Miss. 2013); State v. Ronquillo, 190 Wash.App. 765, 361 P.3d 779, 784-85 (2015); Bear Cloud v. State, 334 P.3d 132, 136 (Wyo. 2014). Further, this conclusion is in line with decisions from the Seventh and Ninth Circuits holding that Graham and Miller apply to sentences of de facto life without parole.[2] McKinley v. Butler, 809 F.3d 908 (7th Cir. 2016); Moore v. Biter, 725 F.3d 1184, 1194 (9th Cir. 2013). To be sure, the sentences in the Seventh and Ninth Circuit cases far exceed Starks’s, but for a defendant the number of years matters little if there is no meaningful opportunity for release.
Lastly, Starks’s life sentence for first-degree felony murder was mandatory under Tennessee law, regardless of his age. In Tennessee, a defendant convicted of first-degree murder “shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life.” Tenn. Code Ann. § 39-13-204(a), (f). Although the statute nominally distinguishes between life and life without parole, there is effectively no difference where release eligibility begins only after 51 to 60 years of service on the sentence. Id. § 40-35-501(h)(l), (i). Thus, I conclude that Starks’s mandatory life sentence violates Miller.
Yet, we may grant relief only if the Tennessee court’s decision rejecting Starks’s claim “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). As the Supreme Court has explained, a decision is contrary to clearly established law “if the state court applies a rule different from the governing law” as set forth in the Supreme Court’s cases, or if the state court “decides a case differently” than the Supreme Court has done “on a set of materially indistinguishable facts.” Bell v. *284 Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A decision involves an unreasonable application of clearly established law “if the state court correctly identifies the governing principle” from the Supreme Court’s cases, but “unreasonably applies it to the facts of the particular case.” Id.
Although I conclude that Starks’s sentence violates the Eighth Amendment, “it is possible fairminded jurists could disagree” that the Tennessee court’s contrary conclusion was “inconsistent with the holding” in Miller. Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Surely no fairminded jurist could conclude that a sentence mandating a hundred years in prison is anything other than life without parole, and drawing that distinction based on the wording of a defendant’s sentence—life, life without parole, or a term of years—would be an unreasonable application of Graham and Miller. But Starks’s sentence falls in a gray area that raises the question whether release eligibility at an age nearing a defendant’s life expectancy violates clearly established law. The Supreme Court has not made clear where to draw the line, cf. Goins v. Smith, 556 Fed.Appx. 434, 440 (6th Cir. 2014), and I recognize that reasonable jurists can disagree whether release after 51 to 60 years is beyond the line. Under these circumstances, § 2254(d)(1) compels us to affirm the denial of relief.

. Starks focuses on his aggregate sentence for felony murder and especially aggravated robbery: life plus 11 years. Our decision in Bunch v. Smith, 685 F.3d 546 (6th Cir. 2012), cert. denied, Bunch v. Bobby, — U.S. —, 133- S.Ct. 1996, 185 L.Ed.2d 865 (2013), which concluded that Graham and Miller did not apply to an 89-year aggregate sentence for multiple nonhomicide offenses, can be read to foreclose the aggregation of sentences for Eighth Amendment purposes in this circuit. Id. at 551-53; see also Goins v. Smith, 556 Fed.Appx. 434, 440 (6th Cir. 2014). But see McKinley v. Butler, 809 F.3d 908 (7th Cir. 2016); Moore v. Biter, 725 F.3d 1184 (9th Cir. 2013). But this case is not on all fours with Bunch, which addressed “consecutive, fixed-term sentences for committing multiple non-homicide offenses,” and suggested that a life sentence would present a different case. Bunch, 685 F.3d at 551 (distinguishing Graham because it "said that a juvenile is entitled to such a 'realistic opportunity to obtain release’ if a state imposes a sentence of 'life’ ”).
Further, Starks received two separate sentences for felony murder and the underlying felony. In Tennessee, "separate convictions and punishments for felony murder and the underlying felony are permissible when the two offenses are charged as separate counts.” State v. Webster, 81 S.W.3d 244, 251 (Tenn. Ct. Crim. App. 2002); see also State v. Godsey, 60 S.W,3d 759, 777-78 (Tenn. 2001); State v. Blackburn, 694 S.W.2d 934, 937 (Tenn. 1985). Given that both of Starks’s sentences were imposed for the same felony murder, there is a stronger argument for considering the Eighth Amendment implications of his sentences in the aggregate. Many states likely would not permit separate sentences for felony murder and robbery under these circumstances, see, e.g., People v. Holt, 15 Cal.4th 619, 63 Cal.Rptr.2d 782, 937 P.2d 213, 250 & n.27 (1997); Commonwealth v. Rivera, 445 Mass. 119, 833 N.E.2d 1113, 1123 (2005); State v. Frazier, 142 N.M. 120, 164 P.3d 1, 2 (2007); State v. Hill, 182 N.J. 532, 868 A.2d 290, 300 (2005); State v. Millsaps, 356 N.C. 556, 572 S.E.2d 767, 770 (2002); State v. Powers, 526 A.2d 489, 495 (R.I. 1987); State v. Elliott, 186 W.Va. 361, 412 S.E.2d 762, 765 (1991); State v. Krawczyk, 259 Wis.2d 843, 657 N.W.2d 77, 85 (Ct. App. 2002) (citing State v. Gordon, 111 Wis.2d 133, 330 N.W.2d 564 (1983)); Mares v. State, 939 P.2d 724, 730 (Wyo. 1997), while other states would, see, e.g., Todd v. State, 917 P.2d 674, 679 (Alaska 1996); Boler v. State, 678 So.2d 319, 322 (Fla. 1996); State v. Ruesga, 619 N.W.2d 377, 382-83 (Iowa 2000); State v. Hinci, 262 Kan. 21, 936 P.2d 1364, 1389 (1997); Bennett v. Commonwealth, 978 S.W.2d 322, 327 (Ky. 1998); People v. Collins, No. 277098, 2008 WL 3876109, at *10 (Mich. Ct. App. Aug. 21, 2008) (per curiam) (citing People v. Ream, 481 Mich. 223, 750 N.W.2d 536, 546 (2008)); State v. Flenoy, 968 S.W.2d 141, 145 (Mo. 1998) (en banc); State v. Close, 191 Mont. 229, 623 P.2d 940, 949-51 (1981); Talancon v. State, 102 Nev. 294, 721 P.2d 764, 768 (1986); People v. Rivers, 150 A.D.2d 736, 542 N.Y.S.2d 19, 20 (1989) (citing People v. Berzups, 49 N.Y.2d 417, 426 N.Y.S.2d 253, 402 N.E.2d 1155 (1981)); State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 693-94 (1997); State v. Fedorowicz, 52 P.3d 1194 (Utah 2002).
Because states vary in their approaches to sentencing juvenile defendants accused of felony murder, fairness requires that the sentence or sentences imposed be considered in the aggregate. For Starks, this makes the constitutional violation even more clear. However, the life sentence alone leaves him without a meaningful opportunity for release, regardless whether his consecutive sentences are properly considered in aggregate.

. Other circuits apparently have not yet directly addressed this issue. The Second Circuit faced a similar Miller question in United States v. Stone, 621 Fed.Appx. 61 (2d Cir. 2015), but explained in an unpublished summary order that the issue had been waived. The Fourth Circuit heard a Graham challenge to an 832-month sentence, but concluded that the claim was time-barred under 28 U.S.C. § 2255(f)(3). In re Sloan, 570 Fed.Appx. 338, 339 (4th Cir. 2014). The Fifth Circuit did not apply Graham and Miller to a. discretionary forty-year sentence for a nonhomicide offense, but that argument was also reviewed only for plain error. United States v. Walton, 537 Fed.Appx. 430, 437 (5th Cir. 2013). The Eighth Circuit addressed a Miller challenge to a fifty-year sentence, but concluded that Miller did not apply because the sentence had not been mandatory. United States v. Jefferson, 816 F.3d 1016, 1019 (8th Cir. 2016).